# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

Paul Anthony Kraft,
    Petitioner

vs

Case No. 1:08cv670
(Spiegel, S.J.; Hogan, M.J.)

Warden, Southern Ohio
Correctional Facility,
    Respondent

## REPORT AND RECOMMENDATION

Petitioner, a prisoner in state custody at the Southern Ohio Correctional Factiliy in Lucasville, Ohio, has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the petition and respondent's return of writ with exhibits, including the trial transcript. (Docs. 2, 16).

### Background

On March 15, 2005, the Hamilton County, Ohio, grand jury returned a seventeen-count indictment charging petitioner with five counts of rape of a minor in violation of Ohio Rev. Code § 2907.02(A)(1)(b), with a "sexually violent predator" specification attached to each such count, as well as twelve counts of pandering sexually oriented matter involving a minor in violation of Ohio Rev. Code §

2907.322(A). (Doc. 16, Ex. 1).[1]

Petitioner entered a plea of not guilty by reason of insanity and requested that "evaluations be conducted which may determine [his] mental state ... at the time of the offense." (*Id.,* Ex. 3). Petitioner, who was referred to Court Clinic Forensic Services for examination on the Suggestion of Incompetence, was found to be "competent for purposes of standing trial." (*Id.,* Ex. 4).

On January 17, 2006, petitioner's counsel filed a motion to dismiss the twelve pandering counts on the ground that Ohio Rev. Code § 2907.322 is unconstitutionally vague and overbroad as applied to petitioner. (*Id.,* Ex. 5). On January 26, 2006, after hearing counsels' arguments, the trial court denied the motion on the record. (*See id.,* Trial Tr. 146-50).

Petitioner waived his right to a trial by jury, electing instead "to be tried by a Judge of the Court." (*See id.,* Ex. 9). On January 26, 2006, after hearing all the evidence and counsels' arguments, the court found petitioner guilty as charged. (*See id.,* Exs. 10-11). On March 2, 2006, the court found petitioner to be a sexual predator and sentenced him to consecutive terms of imprisonment of life for each rape offense and eight (8) years for each pandering offense. (*Id.,* Exs. 13-14).[2]

With the assistance of new counsel appointed to represent petitioner on appeal, petitioner timely appealed to the Ohio Court of Appeals, First Appellate District, raising three assignments of error:

---

[1] In its decision affirming petitioner's convictions on all these counts, the Ohio Court of Appeals pointed out that petitioner's three-year-old daughter was the victim of the five rape offenses charged in the indictment. (Doc. 16, Ex. 18, p. 6). The court further stated that two of the pandering counts involved charges under Ohio Rev. Code §§ 2907.322(A)(2) and 2907.322(A)(4) to the effect that petitioner "had pandered sexually oriented material involving a minor, namely his daughter, by advertising to dessiminate and advertising to present her engaging in sexual activity," and that the remaining ten counts under Ohio Rev. Code § 2907.322(A)(1), alleging that petitioner "had pandered sexually oriented material involving a minor by reproducing the material from the Internet," stemmed from "digital images and videos found on the hard drive of [petitioner's] home computer." (*Id.*).

[2] Clerical errors contained in the original sentencing entry were corrected in a second Judgment Entry filed on June 2, 2006 "nunc pro tunc 3-2-06." (Doc. 16, Ex. 12).

1. The trial court erred as a matter of law by overruling appellant's motion to dismss because RC 2907.322(A)(1) is unconstitutionally broad and vague as applied to appellant.

2. The trial court erred as a matter of law by allowing hearsay evidence to be admitted into evidence which violated his rights under the Confrontation Clause and Due Process Clauses of the United States and Ohio Constitutions.

3. The evidence was insufficient as a matter of law and/or against the manifest weight of the evidence to sustain appellant's convictions for rape and pandering.

(*Id.,* Exs. 15-16).

On May 11, 2007, the Ohio Court of Appeals overruled petitioner's assignments of error and affirmed the trial court's judgment. (*Id.,* Ex. 18). In its Decision, the court made the following factual findings, which are presumed correct under 28 U.S.C. § 2254(e)(1),[3] regarding the "Factual Background" leading to petitioner's convictions:

On March 7, 2005, Special Agent Dan Devine of the United States Secret Service, working undercover as part of an electronic-crimes task force in Miami, Florida, logged onto Yahoo!'s now defunct user-generated "Preteen Baby and Toddler Sex" chatroom. While in the chatroom, Devine saw a public message from a person with the email address bigman042003 ("Bigman") directing other parents to contact him if they "wish[ed] to cam-to-cam with me, my daughter and your kids ***." Bigman's Yahoo! profile indicated that his real name was Paul and that he was a 30-year-old married male living in Cincinnati, Ohio. In the hobby section of the profile, he indicated that he was interested in

---

[3]28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct" unless petitioner rebuts the presumption by "clear and convincing evidence." In this case, because petitioner has neither argued nor presented evidence to rebut the Ohio Court of Appeals' factual findings quoted herein, such findings are presumed to be correct.

"sex, sex, sex" and that he was "domina[nt]" and had "no limits," and that he preferred women with no limits. Devine had learned in past investigations that the reference to "no limits" indicated that the person was willing to engage in sexual activities with children.

Using the screen name lisa_n_miami ("Lisa"), Devine posed as a 30-year-old female with a ten-year-old daughter. Devine, as Lisa, responded to Bigman in a private message that started an on-line conversation about broadcasting sexual acts involving their children. Bigman, using the screenname Matercock, asked Lisa about her daughter's age and what sexual acts the child performed. Bigman then said that his daughter was four years old, and that "mine does everything but i don't pentrate [sic] her pussy, i do pentrate [sic] her ass." Bigman invited Lisa to view him sexually abusing his daughter if she would reciprocate. As part of his invitation, Bigman allowed Lisa to view him and his daughter posing for a webcam and advertised that he would "MAKE HER SUCK MY COCK FOR YOU AND I WILL RUB HER PUSSY AND SOME OTHER STUFF." Lisa claimed that the clarity of the image was insufficient for her to see the girl. Bigman then offered to show his daughter shirtless.

Bigman demanded that Lisa send him a live picture of her with her daughter. Instead, Lisa emailed him a picture of a fully clothed adult that had been altered by age-regression software to make it appear that the adult was her ten-year-old daughter. Lisa avoided sending Bigman a webcam image of herself with her daughter by claiming that she still could not see Bigman's daughter clearly. Frustrated, Bigman then told Lisa that she was a "fake" and "full of shit," and he ended the conversation.

The next day Lisa received four off-line emails from Bigman informing her that he would be on-line "tomorrow," and that "if I give you a [s]how or not depends on you and if you are willing to send me nude pics of [your daughter] and I [prefer] ones showing her being used."

Devine captured Lisa's on-line conversation with Bigman as a real-time file. Also, during the conversation, he began the process of contacting Yahoo! and tracing the bigman042003 email address to an Internet

Protocol ("IP") address. Devine learned that the Internet provider for the account had assigned the IP address to Paul Kraft at 4954 Winneste, Cincinnati, Ohio 45232.

After communicating with Secret Service representatives in Cincinnati, Devine then contacted Detective Rick Sweeney of the Hamilton County Sheriff's computer-crimes section. Sweeney secured a warrant to search Kraft's residence on the evening of March 8. When he arrived at the Kraft home, Kraft was not there, but Kraft's wife, four young sons, and three-year-old daughter, S.K., were present. When Kraft arrived home later, Sweeney arrested him.

During the search of the Kraft home, Sweeney seized Kraft's home computer. John Ruebusch, a forensic computer specialist for the Hamilton County Sheriff, recovered the data from Kraft's computer. He found over 215 child-pornography images stored in two locations on the computer. The first location was a zipped compressed file ("zip file") located within a subdirectory used by the Yahoo! Messenger application. Some of these images were in the active file structure of the operating system. The zip file had been last viewed at 11:40 p.m. on March 7, almost 24 hours before Kraft's arrest. The second location was an unallocated place on the hard drive containing files that had once existed but had been deleted.

Detective Sweeney interviewed Kraft after he had waived his *Miranda* rights. When asked about his web session with Lisa, Kraft initially denied any intent to engage in sexual activity with his daughter, whom he mistakenly believed to be four years old instead of three. He claimed that he was just role-playing in the chatroom with Lisa and with other parents as a ploy to be able to view other parents sexually abusing their children. But later in the interview Kraft admitted that, within the preceding few months, his daughter S.K. had performed fellatio on him three times and that he had anally raped her two times. He also admitted that some of these acts had been broadcast on the Internet via his webcam. Kraft described S.K. as inconsolable after he had anally raped her. Kraft also explained that he liked the "ideology of sex" and described a history of sexually deviant behavior, including masturbating while viewing child pornography that was on his computer.

Soon after his confession, Kraft admitted to Susan Moore that he had sexually abused S.K., but not his other children. Moore, an employee of the Hamilton County Jobs and Family Services agency, had visited Kraft in the Hamilton County Justice Center to obtain Kraft's consent to place the five Kraft children in the temporary care of the agency.

After Kraft's arrest, Loreen Watkins, an intake investigator in the sexual-abuse unit of the Hamilton County Jobs and Family Services agency, transported S.K. and her brothers to the Mayerson Center at Cincinnati Children's Hospital for a sexual-abuse interview and physical examination. During her sexual-abuse interview, S.K. identified the vaginal area of her body as her "lady" and said that "daddy [had] touched her lady." Dr. Kathi Makoroff performed the physical examination of S.K. and determined that her vagina, rectum, and mouth appeared normal.

Eloise Caultron became the foster parent for S.K. and her twin brother immediately after Kraft's arrest. While bathing the children, she observed them playing a game called "choo-choo," where they would use their private parts to hump and grind against the other's "back end." She also heard S.K. say that "my dad's got a big weewee" and that "he put his weewee in my butt and it hurt."

Devine sent the images recovered from Kraft's computer to the National Center for Missing and Exploited Children ("NCMEC"). This agency assists law enforcement agencies in child-exploitation investigations by cataloguing child-pornography images and sharing with law enforcement officials the victims' identities as learned in prior criminal investigations. In response to Devine's submission, NCMEC sent him a technical-assistance report indicating that some of the images found on Kraft's computer involved children previously identified by law enforcement officials in child-exploitation investigations.

(*Id.,* Ex. 18, pp. 2-6).

With the assistance of his appellate counsel, petitioner next filed a timely notice of appeal to the Ohio Supreme Court. (*Id.,* Ex. 19). In the memorandum in support of jurisdiction filed by counsel, petitioner asserted two propositions of law:

1. RC 2907.322 is unconstitutionally overbroad and vague as applied to Appellant.

2. Whether the trial court can use hearsay evidence as "some evidence" to allow Appellant's confession into evidence in violation of the *"corpus delicti* rule."

(*Id.,* Ex. 20).

On September 26, 2007, the Ohio Supreme Court denied petitioner leave to appeal and summarily dismissed the appeal "as not involving any substantial constitutional question." (*Id.,* Ex. 22).

Petitioner next commenced the instant habeas corpus action. In the petition, which was filed on September 30, 2008, petitioner alleges three grounds for relief:

**Ground One:** The tr[ia]l court found me guilty of a law that is unconstitutional[ly] overbroad and vague as applied to me. With the advancement in computer technologies it is impossible to tell between virtual or real child porn.... It makes no difference if law enforcement can prove the material I rec[e]ived or was reviewing is illegal material after I was arrested or at trial. The fact is no individual outside law enforcement with proper training and programs can tell the difference between illegal child porn and legal[] child porn....

**Ground Two:** This is not harmless error[] due to the fact that the District Attorney did not provide evidence that the crime []ever took place nor ... provide[d] evidence that I commit[t]ed the crime of rape. The pornographic pictures do[] not prove I commit[t]ed the act of rape. Furthermore ... the pandering charges ... can not be considered as evidence nor could I be charge[d] with the crime of pandering. This means I was found guilty based on hearsay and inadmiss[i]ble supposed confession. You can not use hearsay or the confession ... to establish a *corpus delicti*.... So Ground T[wo] is w[h]ether the tr[ia]l court can use hearsay evidence as some evidence to allow the appellant[']s confes[s]ion in violation of the *corpus delicti* rule?

**Ground Three:** Evidence was insufficient as a matter or law and/or

ag[ainst] the manifest weight of the evidence to sustain appellant's conviction[s] for rape and pandering....

(Doc. 2, pp. 5-6, 8).

# OPINION

## A. Petitioner Is Not Entitled To Relief Based On The Claims Alleged In Ground One Challenging The Constitutionality Of His Pandering Convictions Under Ohio Rev. Code § 2907.322 On Overbreadth And Vagueness Grounds

In Ground One of the petition, petitioner contends his convictions under Ohio's pandering statute are void because the statute is unconstitutionally overbroad and vague as applied to him. (Doc. 2, p. 5). These claims, which were raised by petitioner on direct appeal to both the Ohio Court of Appeals and Ohio Supreme Court, are subject to review on the merits.

The Ohio Court of Appeals was the only state court to issue a reasoned decision addressing the merits of petitioner's claims challenging the constitutionality of Ohio Rev. Code § 2907.322(A) on overbreadth and vagueness grounds. The court rejected petitioner's claims seeking to void his convictions under subdivisions (A)(1), (A)(2) and A(4) of the statute, reasoning in relevant part as follows:

> "The overbreadth doctrine prohibits the Government from banning unprotected speech if a substantial amount of protected speech is prohibited or chilled in the process." The vagueness doctrine ensures "that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." This doctrine also ameliorates the danger of an arbitrary or discriminatory application of the law.
>
> In reviewing a constitutionally based challenge to a statute, we are mindful that legislative enactments enjoy a strong presumption of constitutionality. To overcome this presumption, the challenging party must prove that the statute is unconstitutional beyond a reasonable doubt.

We begin by examining the constitutional dimensions of restrictions on child pornography. The First Amendment does not protect child pornography because the state has a compelling interest in preventing direct and indirect harm to children who are sexually exploited. But the United States Supreme Court, in *Ashcroft v. The Free Speech Coalition,* [535 U.S. 234 (2002),] held that pornographic materials that "appear[] to be" or "convey [] the impression" of a minor "engaging in sexually explicit conduct," but, in fact, do not involve the use of the minor, are protected speech, unless they are obscene. These pornographic materials, which include computer-software-generated pornography or pornography made by using youthful-looking adults, are part of what is referred to as "virtual child pornography."

The *Ashcroft* Court held that a prohibition on pornography created without using real minors results in the abridgment of "the freedom to engage in a substantial amount of lawful speech," without the link to the same state interests implicated where actual children are abused. Thus, the *Ashcroft* Court struck down two subdivisions of the Child Pornography Act of 1996 on the basis of overbreadth, where these subdivisions banned virtual child pornography that was generated by computer software or was created with youthful-looking adults.

The statute at issue, R.C. 2907.322, prohibits the pandering of sexually oriented materials involving a minor where the panderer has "knowledge of the character of the material or performance involved." The specific pandering acts are described in subdivisions (A)(1) through (A)(6) of the statute.

The statute also provides in subdivision (B)(3) that "the trier of fact may infer that a person in the material or performance involved is a minor if the material or performance, through its title, text, visual representation, or otherwise, represents or depicts the person as a minor." This statutory inference applies to subdivisions (A)(1) through (A)(6).

Kraft claims that the statutory inference provided in subdivision (B)(3) of R.C. 2907.322 renders the entire statute unconstitutionally overbroad in light of the *Ashcroft* decision.

In *State v. Huffman,* [847 N.E.2d 58 (Ohio Ct. App. 2006),] this court rejected a similar overbreadth challenge to subdivision (A)(1) of R.C. 2907.322. The *Huffman* court began its analysis by noting that the scope of the ban in R.C. 2907.322(A)(1) is limited by its terms to the depiction of sexual activity by a minor. A "minor" is statutorily defined as a person under the age of 18. Thus, unlike the statute at issue in *Ashcroft,* the statute here only proscribes pornography depicting an **actual minor**....

With respect to the inference language found in subdivision (B)(3), the *Huffman* court held that this language merely restates the common-law doctrine that allows the state to prove its case with circumstantial evidence. The *Huffman* court followed the reasoning of the Ninth Appellate District in *State v. Morris,* [No. 04CA0036, 2005 WL 356801 (Ohio Ct. App. Feb. 16, 2005) (unpublished),] in coming to this conclusion.

Federal courts have held that, even after *Ashcroft,* a jury may rely on circumstantial evidence, including nonexpert testimony, in concluding that an actual minor was used in creating a pornographic image.

The *Huffman* court recognized that the Eleventh Appellate District in *State v. Tooley*[, No. 2004-P-0064, 2005 WL 3476649 (Ohio Ct. App. Dec. 16, 2005) (unpublished),] had struck down R.C. 2907.322 as overbroad, after interpreting subdivision (B)(3) to reach virtual child pornography. But the *Huffman* court rejected this interpretation where the statute clearly proscribes only pornography depicting an actual minor. The Ohio Supreme Court will ultimately resolve this conflict between the districts, as *Tooley* and *Huffman* are both currently on appeal before the court.

After applying the rationale of the *Huffman* court to this case, we hold that Kraft's overbreadth challenges to subdivisions (A)(1), (A)(2), and (A)(4) of R.C. 2907.322 are meritless, where the statute does not attempt to criminalize the pandering of pornography created without the use of an actual minor.

Likewise, we find no merit to Kraft's contention that the statute is void

for vagueness. In *Huffman,* we rejected an argument that subdivision (A)(1) of the statute does not provide fair warning of the proscribed conduct, where the "plain language" of the statute "informs an ordinary citizen that its prohibitions apply to pornography depicting an actual minor."

We also held that the scienter requirement found in R.C. 2907.322 provides sufficient clarity to avoid inhibiting the exercise of protected speech. Pursuant to the scienter requirement, an offender must have "knowledge of the character of the material or performance involved."

Kraft argues to the contrary, claiming that advances in computer technology have rendered it difficult for a person to distinguish between images created with actual minors and those that are not, and, thus, that the statute inhibits him from possessing material depicting virtual child pornography, resulting in self-censorship. Under these circumstances, he claims that the statute's scienter requirement runs afoul of the First Amendment.

We do not agree: the scienter requirement–knowledge of the character of the material or performance involved–requires evidence that the offender knew that the image involved a real minor. The state must show that the offender knew that the material depicted an actual minor because the pandering of non-obscene sexually oriented materials depicting adults or virtual children is not an offense. The age and actual existence of the performer "is the crucial element separating legal innocence from wrongful conduct."

Further, the scienter requirement demonstrates that the focus of the statute is on the "calculated purvey[or]" of child pornography. Thus, the statute comports with the First Amendment.

Finally, we reject Kraft's self-censorship argument as a basis to invalidate the statute, where virtual child pornography is on the fringe of protected speech, and where the statute provides him with a reasonable degree of certainty concerning what conduct is proscribed. Under these circumstances, it is not "unfair to require that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that

he may cross the line."

Because R.C. 2907.322(A)(1), (2), and (4) only proscribe the pandering of pornography depicting an actual minor, these subdivisions of the statute are not unconstitutionally overbroad. Further, because the proscriptions in the subdivisions are clear, and the proscriptions only reach those who know that they are pandering pornography depicting an actual minor, the statute is not unconstitutionally vague. Accordingly, we hold that the trial court properly denied Kraft's motion to dismiss, and we overrule the assignment of error.

(Doc. 16, Ex. 18, pp. 10-14) (emphasis in original) (footnote citations omitted).

After the Ohio Court of Appeals rendered its decision on direct appeal in the instant case, the Ohio Supreme Court resolved the conflict between the districts in *Tooley* and *Huffman* on the overbreadth issue raised herein. On July 25, 2007, the Ohio Supreme Court issued a published decision in *Tooley*, upholding the constitutionality of Ohio Rev. Code § 2907.322 and affirming the defendant's conviction for pandering under that statute. *State v. Tooley*, 872 N.E.2d 894 (Ohio 2007), *cert. denied*, 128 S.Ct. 912 (2008); on September 19, 2007, the Ohio Supreme Court issued its decision in *Huffman*, summarily affirming the Court of Appeals' decision in part "on the authority of *State v. Tooley*, ... 872 N.E.2d 894," and dismissing the defendant's appeal based on a second proposition of law "as having been improvidently granted." *State v. Huffman*, 872 N.E.2d 1213 (Ohio 2007).

In *Tooley*, the state supreme court rejected the defendant's argument that Ohio's child pornography statutes, including the pandering statute challenged herein, are unconstitutionally overbroad in light of the Supreme Court's *Ashcroft* decision and "advancements in technology." *See Tooley*, 872 N.E.2d at 901. Specifically, after discussing *Ashcroft*, the court first ruled that the record failed to support the hypothesis posited by defendant that *Ashcroft* renders Ohio's child pornography statutes unconstitutional because "fake images cannot be distinguished from images of real children." *Id.* at 901-04.

The court next turned to the defendant's claim that the inference permitted under Ohio Rev. Code § 2907.322(B)(3), allowing "the trier of fact [to] infer that a person in the material or performance involved is a minor if the material or performance ... represents or depicts the person as a minor," is unconstitutionally

overbroad "because it chills a significant amount of protected speech." *Id.* at 904-05. The court rejected this contention, reasoning in relevant part:

> ....It is important to remember that the two previous [] sections that were determined to be unconstitutional [in *Ashcroft*] had been added *as part of the definition* of "child pornography." The additions were designed to expand the reach of the federal statute to any visual depiction that "is, or appears to be, of a minor engaging in sexually explicit conduct" and to any image that "conveys the impression" that it depicts a minor.
>
> The permissive inference under Ohio's statute, on the other hand, simply allows what the common law has always permitted; that is, it allows the state to prove its case with circumstantial evidence.... ...R.C. 2907.322(B)(3) does not equate virtual child pornography, which is protected under the First Amendment, with actual child pornography, which is not protected. Courts of appeals [in Ohio] other than the Eleventh District have determined that R.C. 2907.322 is different from the [*Ashcroft*] provisions because the Ohio statute has never been interpreted to prohibit child pornography that is created without the use of real children. The permissive inference under R.C. 2907.322(B)(3) is not an addition to the definition of "child pornography," but is merely an evidentiary tool.
>
> To illustrate the distinction, under the [provision] examined in *Ashcroft,* even if a defendant could prove that an adult rather than a child was depicted or that an image was wholly computer-generated, possession of an image that "appeared" to depict or "convey[ed] the impression" that it depicted a minor would lead to a conviction. In other words, whether the image was of a real child did not matter; the image's appearance or how it was presented was conclusive.
>
> To the contrary, R.C. 2907.322(B)(3) merely permits, and does not require, a fact-finder to infer from circumstantial evidence the age of the person in an image. The state still must prove all elements beyond a reasonable doubt, including that a real child is depicted, to support a conviction for possession of child pornography under R.C. 2907.322. In a state prosecution, the inference will not override the actual content of the image. If the evidence establishes that the defendant possessed an

image generated without the use of a child, the defendant should be acquitted. Despite any appearance or representation, if no actual minor is depicted, there is no violation of R.C. 2907.322.

*Id.* at 905-06 (emphasis in original) (footnote and citations omitted).

In conclusion, the court summarized its holding in relevant part as follows:

All of Tooley's arguments founder on the assumption that simulated child pornography is indistinguishable from actual child pornography and, furthermore, is so prevalent that there is an unacceptable risk that a person will be convicted for possessing pornography not involving minors.... Tooley has not met his burden of establishing that a substantial amount of protected speech is covered by these Ohio statutes. Because R.C. 2907.322 and 2907.333 are designed to reach material involving actual children, as the majority of appellate courts have held, they do not run afoul of the First Amendment.

We hold that the permissive inference of R.C. 2907.322(B)(3) does not render R.C. 2907.322(A)(5) unconstitutionally overbroad by equating virtual child pornography, which is protected expression under the First Amendment, with pornography that involves real children, which is not protected....

*Id.* at 907-08.

In this federal habeas case, the applicable standard of review governing the adjudication of petitioner's overbreadth and vagueness claims, which were decided on the merits by the Ohio courts, is set forth in 28 U.S.C. § 2254(d). Pursuant to this standard, petitioner is not entitled to relief unless the state court's adjudication of his claims resulted in a decision that (1) is contrary to, or involves an unreasonable application of, clearly established federal law as determined by the United States Supreme Court, or (2) is based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. *See* 28 U.S.C. § 2254(d); *see also Williams v. Taylor,* 529 U.S. 362, 402-03 (2000) (O'Connor, J., writing for majority on this issue); *Harris v. Stovall,* 212 F.3d 940, 942 (6th Cir. 2000), *cert. denied,* 532 U.S. 947 (2001); *Harpster v. Ohio,* 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied,* 522 U.S. 1112 (1998).

A state court decision is "contrary to" clearly established federal law as determined by the Supreme Court if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405-06 (O'Connor, J.); *Harris*, 212 F.3d at 942. An "unreasonable application" of Supreme Court precedent occurs (1) if the state court identifies the correct legal standard but unreasonably applies it to the facts of the case, or (2) if the state court either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *Williams*, 529 U.S. at 407-08 (O'Connor, J.).

Under § 2254(d)(1)'s "unreasonable application" clause, a federal habeas corpus court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411 (O'Connor, J.); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002); *McGhee v. Yukins*, 229 F.3d 506, 510 (6th Cir. 2000); *Harris*, 212 F.3d at 942.

The reasonableness inquiry is an objective one; it does not involve a subjective inquiry into whether or not reasonable jurists would all agree that the state court's application was unreasonable. *Williams*, 529 U.S. at 409-10 (O'Connor, J.); *see also Washington v. Hofbauer*, 228 F.3d 689, 698 (6th Cir. 2000); *Harris*, 212 F.3d at 942-43. Moreover, the writ may issue only if the application is objectively unreasonable "in light of the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision." *McGhee*, 229 F.3d at 510, 512 (citing *Williams*, 529 U.S. at 412).

In this case, the undersigned concludes that petitioner is not entitled to habeas relief because the Ohio Court of Appeals' decision rejecting petitioner's overbreadth and vagueness claims neither is "contrary to" nor involves and "unreasonable application" of clearly established federal law as determined by the United States Supreme Court.

As an initial matter, it is important to point out that overbreadth and vagueness are "logically related and similar," but distinct concepts. *See Kolender v. Lawson*, 461 U.S. 352, 358 n.8 (1983); *Village of Hoffman Estates v. Flipside, Hoffman Estates,*

*Inc.,* 455 U.S. 489, 494-95 & n.6-7, 497 n.9 (1982); *see also Kreimer v. Bureau of Police,* 958 F.2d 1242, 1266 (3rd Cir. 1992).

The overbreadth doctrine developed as an exception to the traditional rule of standing in the First Amendment area, and is premised on the notion "that the very existence of some broadly written statutes may have such a deterrent effect on free expression that they should be subject to challenge even by a party whose own conduct may be unprotected." *Members of City Council v. Taxpayers for Vincent,* 466 U.S. 789, 796-98 (1984). "The doctrine is predicated on the sensitive nature of protected expression: 'persons whose expression is constitutionally protected may well refrain from exercising their rights for fear of criminal sanctions by a statute susceptible of application to protected expression.'" *New York v. Ferber,* 458 U.S. 747, 768-69 (1982) (quoting *Village of Schaumburg v. Citizens for a Better Environment,* 444 U.S. 620, 634 (1980)).

The Supreme Court has emphasized that "[b]ecause of the wide-reaching effects of striking down a statute on its face at the request of one whose own conduct may be punished despite the First Amendment, ... the overbreadth doctrine is 'strong medicine'" to be employed "with hesitation" and "only as a last resort." *Id.* at 769; *see also Broadrick v. Oklahoma,* 413 U.S. 601, 613 (1973). In a recent case, involving an overbreadth challenge to a federal statute criminalizing the possession and distribution of material pandered as child pornography, the Supreme Court explained:

> The doctrine seeks to strike a balance between competing societal costs.... On the one hand, the threat of enforcement of an overbroad law deters people from engaging in constitutionally protected speech, inhibiting the free exchange of ideas. On the other hand, invalidating a law that in some of its applications is perfectly constitutional–particularly a law directed at conduct so antisocial that it has been made criminal–has obvious harmful effects. In order to maintain an appropriate balance, we have vigorously enforced the requirement that a statute's overbreadth be *substantial*, not only in an absolute sense, but also relative to the statute's plainly legitimate sweep....

*United States v. Williams,* 128 S.Ct. 1830, 1838 (2008) (and Supreme Court cases cited therein) (emphasis in original).

Therefore, as the Ohio Court of Appeals apparently understood in considering the merits of petitioner's overbreadth claim in the instant case (*see* Doc. 16, Ex. 18, p. 10), a statute will not be invalidated as overbroad unless the alleged overbreadth is "not only [] real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Id.*; *see also Broadrick,* 413 U.S. at 615; *Ferber,* 458 U.S. at 769-70. "Even where a statute at its margins infringes on protected expression, it may not be invalidated as overbroad if the "remainder of the statute ... covers a whole range of easily identifiable and constitutionally proscribable ... conduct." *Osborne v. Ohio,* 495 U.S. 103, 112 (1990) (quoting *Ferber,* 458 U.S. at 770 n.25).

In distinction, as the Ohio Court of Appeals also apparently understood (*see* Doc. 16, Ex. 18, p. 10), the vagueness doctrine "is an outgrowth not of the First Amendment but of the Due Process Clause." *Williams,* 128 S.Ct. at 1845. Under this doctrine, a "conviction fails to comport with due process if the statute under which it is obtained fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *Id.*; *see also Kolender,* 461 U.S. at 357 (and Supreme Court cases cited therein) (the vagueness doctrine was developed to ensure penal statutes "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement"); *Condon v. Wolfe,* 310 Fed.Appx. 807, 820 (6th Cir. Feb. 12, 2009) (not published in Federal Reporter).

"The degree of vagueness that the Constitution tolerates–as well as the relative importance of fair notice and fair enforcement–depends in part on the nature of the enactment." *Flipside,* 455 U.S. at 498. When the challenged statute imposes criminal penalties, "the standard of certainty is higher." *Kolender,* 461 U.S. at 358 n.8 (citing *Winters v. New York,* 333 U.S. 507, 515 (1948)); *see also Condon,* 310 Fed.Appx. at 820-21. Moreover, "[w]here a statute's literal scope, unaided by a narrowing state court interpretation, is capable of reaching expression sheltered by the First Amendment, the vagueness doctrine demands a greater degree of specificity than in other contexts." *Smith v. Goguen,* 415 U.S. 566, 573 (1974); *see also Condon,* 310 Fed.Appx. at 821. In "the First Amendment context, a vagueness challenge may prevail on the ground that 'it is unclear whether [the statute] regulates a substantial amount of protected speech.'" *Condon,* 310 Fed.Appx. at 821 (quoting *Williams,* 128 S.Ct. at 1845).

In examining whether or not a state statute is too vague or overbroad to

withstand a constitutional challenge, the court must construe the statute "as though it read[s] precisely as the highest court of the State has interpreted it." *Kolender,* 461 U.S. at 355 n.4 (quoting *Wainwright v. Stone,* 414 U.S. 21, 22-23 (1973), in turn quoting *Minnesota ex rel. Pearson v. Probate Court,* 309 U.S. 270, 273 (1940)); *see also Flipside,* 455 U.S. at 494 n.5 ("In evaluating a facial challenge to a state law, a federal court must, of course, consider any limiting construction that a state court or enforcement agency has proffered.").

1. Overbreadth Claim.

Here, the Ohio Court of Appeals properly began its analysis of petitioner's claim that Ohio Rev. Code § 2907.322(A) is overbroad by examining the constitutional dimensions of restrictions on child pornography. As the court recognized, Supreme Court precedents have clearly established that because the State has a compelling interest of "surpassing importance" in preventing the sexual exploitation and abuse of children, child pornography is not entitled to First Amendment protection as long as the conduct to be prohibited is "adequately defined by the applicable state law, as written or authoritatively construed." *Ferber,* 458 U.S. at 756-58, 764;[4] *see also Osborne,* 495 U.S. at 108-11(holding that "Ohio may constitutionally proscribe the possession and viewing of child pornography"); *cf. Ashcroft v. Free Speech Coalition,* 535 U.S. 234, 244-45, 249-50 (2002).

The broad authority to proscribe child pornography is not unlimited, however. As the Ohio Court of Appeals pointed out, in *Ashcroft,* the Supreme Court struck down as unconstitutionally overbroad two statutory provisions which expanded the federal prohibition on child pornography to include "a range of sexually explicit images, sometimes called 'virtual child pornography,' that appear to depict minors but were produced by means other than using real children, such as through the use of youthful-looking adults or computer-imaging technology." *See Ashcroft,* 535 U.S. at 234, 250-58; *see also Williams,* 128 S.Ct. at 1836. In so ruling, the Court reasoned

---

[4]It is noted that in *Ferber,* the Supreme Court held that because of the compelling governmental interest involved in protecting minors from sexual exploitation and abuse, the First Amendment does not require that the proscribed child pornography meet the standard of "obscenity" enunciated in *Miller v. California,* 413 U.S.15 (1973)–i.e., that the "works ..., taken as a whole, appeal to the prurient interest in sex, ... portray sexual conduct in a patently offensive way, and ... taken as a whole, do not have serious literary, artistic, political, or scientific value." *Ferber,* 458 U.S. at 755, 760-61.

that unlike the materials proscribed in *Ferber* and *Osborne,* "virtual child pornography" is entitled to First Amendment protection because it does not involve the exploitation or abuse of "real children" and thus does not directly implicate the "child-protection rationale for speech restriction." *See id.*

After *Ashcroft*, and after the Ohio Court of Appeals issued its decison on direct appeal in the instant case, the Supreme Court decided another child pornography case stemming from federal legislation enacted in the aftermath of *Ashcroft.* The new legislation added a pandering and solicitation provision prohibiting any person from "knowingly" promoting, advertising, presenting, distributing or soliciting "through the mails, or in interstate ... commerce by any means, including by computer, any material or purported material ... in a manner that reflects the belief, or that is intended to cause another to believe, that the material or purported material is, or contains ... an obscene visual depiction of a minor engaging in sexually explicit conduct; or ... a visual depiction of an actual minor engaging in sexually explicit conduct." *See Williams,* 128 S.Ct. at 1836-37.

The Court in *Williams* rejected the defendant's overbreadth challenge to the new provision, holding that the "statute's definition of the material or purported material that may not be pandered or solicited precisely tracks the material held constitutionally protected in *Ferber* and *Miller* [*v. California,* 413 U.S. 15 (1973)]: obscene material depicting (actual or virtual) children engaged in sexually explicit conduct, and any other material depicting actual children engaged in sexually explicit conduct. *Id.* at 1839.

Moreover, in further holding that the statute did not criminalize a substantial amount of protected expressive activity, the Court rejected the contention that the statute is objectionable because it "could ensnare a person who mistakenly believes that [the material being pandered] is child pornography." *Id.* at 1842-43. The Court reasoned:

Offers to deal in illegal products or otherwise engage in illegal activity do not acquire First Amendment protection when the offeror is mistaken about the factual predicate of the offer. The pandering and solicitation made unlawful by the Act are sorts of inchoate crimes–acts looking toward the commission of another crime, the delivery of child pornography. As with other inchoate crimes–attempt and conspiracy, for example–impossibility of completing the crime because the facts were

not as the defendant believed is not a defense.

*Id.* at 1843. The Court further reasoned that, conversely, the statute would not apply to someone who mistakenly believes that an innocuous picture depicts proscribed "sexually explicit conduct," because under the statute, not only must the defendant believe that the picture contains certain material, but also the "material in fact (and not merely in his estimation) must meet the statutory definition." *Id.*

Finally, the Court addressed the dissent's accusation that the majority's decision amounted to a "silent[] overruling" of *Ferber* and *Ashcroft* as follows:

> According to the dissent, Congress has made an end-run around the First Amendment's protection of virtual child pornography by prohibiting proposals to transact in such images, rather than prohibiting the images themselves. But an offer to provide or request to receive virtual child pornography is not prohibited by the statute. A crime is committed only when the speaker believes or intends the listener to believe that the subject of the proposed transaction depicts *real* children. It is simply not true that this means "a protected category of expression [will] inevitably be suppressed[.]".... Simulated child pornography will be as available as ever, so long as it is offered and sought *as such*, and not as real child pornography.

*Id.* at 1844 (emphasis in original).

It is clear from the line of Supreme Court cases discussed above that a statute proscribing the pandering of both actual and purported child pornography involving the use of real children does not trigger First Amendment overbreadth concerns.

In *Tooley,* the Ohio Supreme Court construed Ohio Rev. Code § 2907.322 as criminalizing only the pandering of materials involving the use of real children. In addition, in *Tooley,* the Ohio Supreme Court interpreted the "permissive inference" provision set forth in Ohio Rev. Code § 2907.322(B)(3) as "merely an evidentiary tool" permitting, but not requiring, the fact-finder to infer from circumstantial evidence the age of the person in an image. *See Tooley,* 872 N.E.2d at 904-08. The state supreme court's construction of Ohio's pandering statute accords with the Ohio Court of Appeals' decision on direct appeal in the instant case. Similarly, in addressing petitioner's constitutional claims, this Court must construe the statute "as

though it read[s] precisely as the highest court of the State has interpreted it." *See Kolender,* 461 U.S. at 355 n.4; *see also Flipside,* 455 U.S. at 494 n.5. Ohio's pandering statute, read precisely as the Ohio Supreme Court has interpreted it, does not implicate any First Amendment overbreadth concerns under the applicable Supreme Court precedents.

Nevertheless, petitioner contends that the statute is overbroad, substantially impinging on protected speech, because advancements in computer technologies have rendered it impossible to distinguish between pornography involving real children and virtual child pornography. (*See* Doc. 2, p. 5). In this case, the Ohio Court of Appeals only addressed this contention in considering petitioner's corollary claim that the statute is void for vagueness. (*See* Doc. 16, Ex. 18, p. 13). However, the overbreadth argument was considered and rejected by the Ohio Supreme Court in *Tooley,* 872 N.E.2d at 902-04, because the defendant had not established the validity of the underlying assumption that "it is absolutely impossible to distinguish between simulated and actual child pornography."

As respondent points out in the return of writ (Doc. 16, Brief, p. 18), the government raised the same argument in *Ashcroft* in support of its position that the "objective of eliminating the market for pornography ... using real children necessitates a prohibition on virtual images as well." *See Ashcroft,* 535 U.S. 254. The Supreme Court was not persuaded, stating:

> The hypothesis [that virtual images are indistinguishable from real ones] is somewhat implausible. If virtual images were identical to illegal child pornography, the illegal images would be driven from the market by the indistinguishable substitutes. Few pornographers would risk prosecution by abusing real children if fictional, computerized images would suffice.

*Id.*

The state courts' determination that any difficulties in distinguishing between simulated and real child pornography does not render Ohio Rev. Code § 2907.322 unconstitutionally overbroad comports with the Supreme Court's *Ashcroft* decision. *Cf. United States v. Lantz,* No. CR-2-08-015, 2009 WL 1107708, at *4 (S.D. Ohio Apr. 22, 2009) (Smith, J.) (unpublished) (in denying the defendant's motion to dismiss an indictment brought under the federal child pornography statute, the district court rejected the defendant's argument that the statute was overbroad as applied to him

because he had "difficulty in discerning a virtual from an actual image of a child").[5]

Accordingly, in sum, the undersigned concludes that the state courts' adjudication of petitioner's overbreadth claim did not result in a decision that is contrary to or involves an unreasonable application of clearly established federal law as determined by the United States Supreme Court. *Cf. Huffman v. Brunsman*, __ F.Supp.2d __, No. 1:07cv266, 2008 WL 4925813, at *7-8, *17-23 (S.D. Ohio Nov. 14, 2008) (Barrett, J.; Merz, M.J.) (to be published) (similarly rejecting overbreadth challenge to Ohio Rev. Code § 2907.322 on federal habeas review).

## 2. Vagueness Claim.

Petitioner also argues that Ohio Rev. Code § 2907.322 is unconstitutionally vague as applied to him. As an initial matter, petitioner does not argue, nor is he able to prevail on any claim, that Ohio Rev. Code § 2907.322 fails to provide a person of ordinary intelligence fair warning of the proscribed conduct, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *See Williams*, 128 S.Ct. at 1845; *see also Kolender*, 461 U.S. at 357. As the Ohio Court of Appeals reasonably determined in reliance on its prior decision in *Huffman*, which was later affirmed by the Ohio Supreme Court, a reading of the statute "informs an ordinary citizen that its prohibitions apply to pornography depicting an actual minor." (*See* Doc. 16, Ex. 18, p. 13) (quoting *Huffman*, 847 N.E.2d at 66). Moreover, the statute, which contains a "scienter requirement" of knowledge on the part of the offender, describes with sufficient particularity what a person must do to commit a violation. (*Id.*).

It is petitioner's position that even though the statute itself provides fair warning of the proscribed conduct, given advancements in computer technologies, it is difficult, if not impossible, for an ordinary person to ascertain whether the materials giving rise

---

[5]*See also United States v. Sheldon*, 223 Fed.Appx. 478, 483-84 (6th Cir. May 15, 2007) (not published in Federal Reporter) (and cases cited therein) (on appeal from a conviction under the federal child pornography statute, the Sixth Circuit held that *Ashcroft* "did not impose a special or heightened evidentiary burden on the Government to prove that images are of real children," and that the "question of whether the images are virtual or real is one of fact, to be determined by evidence about which argument can be made to the jury"); *United States v. Kimler*, 335 F.3d 1132, 1142 (10th Cir.) (in rejecting the argument that *Ashcroft* implicitly required that, "absent direct evidence of identity, expert testimony is required to prove that the prohibited images are of real, not virtual, children," the Tenth Circuit stated: "Juries are still capable of distinguishing between real and virtual images."), *cert. denied*, 540 U.S. 1083 (2003).

to pandering charges involve depictions of actual minors or virtual images of simulated child pornography. (*See* Doc. 2, p. 5).

Relying on the Supreme Court's decision in *Williams*, the Sixth Circuit rejected an analogous claim raised in a case challenging a conviction for "knowing possession of child pornography" under the federal Child Pornography Protection Act. *See United States v. Paull*, 551 F.3d 516, 525-26 (6th Cir. 2009), *cert. denied*, _ S.Ct. _, 2009 WL 1849801, 78 U.S.L.W. 3001, 3015, 3150, 3171 (U.S. Oct. 5, 2009) (No. 08-1587). In *Williams*, the Court found that the lower court had erred in concluding that a provision of the federal pandering statute was void for vagueness based on certain hypotheticals involving innocent conduct that "could arguably be prosecuted for pandering." *Williams*, 128 S.Ct. at 1845-46. The Court stated that the lower court's "basic mistake lies in the belief that the mere fact that close cases can be envisioned renders a statute vague. That is not so.... The problem that poses is addressed, not by the doctrine of vagueness, but by the requirement of proof beyond a reasonable doubt." *Id.* at 1846. The Court continued:

> What renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is. Thus, we have struck down statutes that tied criminal culpability to whether the defendant's conduct was "annoying" or "indecent"–wholly subjective judgments without statutory definitions, narrowing context, or settled legal meanings....
>
> There is no such indeterminacy here.... To be sure, it may be difficult in some cases to determine whether these clear requirements have been met. "But courts and juries every day pass upon knowledge, belief and intent–the state of men's minds–having before them no more than evidence of their words and conduct, from which, in ordinary human experience, mental condition may be inferred."...

*Id.* (citations omitted).

In *Paull*, the Sixth Circuit applied this reasoning in *Williams* in rejecting the defendant's claim that the federal child pornography statute is unconstitutionally vague because the defendant lacked "'the capacity to know whether the charged items contain actual minors' or virtual images of simulated child pornography protected under

*Ashcroft.*" *Paull,* 551 F.3d at 525. The court pointed out that the defendant was not arguing that he was unable to determine the proscribed conduct from a reading of the statute, but rather that, "knowing what is illegal, he cannot distinguish between the prohibited and the permitted." *Id.* The court held: "Such an inability to determine whether a crime has been committed 'is addressed, not by the doctrine of vagueness, but by the requirement of proof beyond a reasonable doubt.'" *Id.* (quoting *Williams,* 128 S.Ct. at 1846). The court reasoned further:

> The government provides a helpful analogy: "A defendant in a drug case could use [the] same logic to argue the drug statutes are unconstitutionally vague because he could not know at the time of purchase whether he was buying authentic cocaine."... Like the drug messenger arguing the substance he possessed was not real drugs, [the defendant's] refuge from illegal prosecution is not the constitution but putting the government to its burden to prove that he possessed child pornography.

*Id.* at 525-26.

Similarly, in this case, petitioner's argument based on his purported inability to distinguish between real and virtual child pornography fails to implicate constitutional concerns.

Here, the state appellate court reasonably determined that Ohio Rev. Code § 2907.322 is not unconstitutionally vague because an element of the offense is that the offender have "knowledge of the character of the material or performance involved," which "provides sufficient clarity to avoid inhibiting the exercise of protected speech." As the state court reasoned, this "scienter" element requires the State to prove that the offender knew the materials giving rise to the pandering charges depicted an actual minor. In addition, the state appellate court reasonably determined that the statute was not rendered unconstitutionally vague because any difficulty in distinguishing between real and virtual child pornography may inhibit a person from exercising his First Amendment right to possess virtual child pornography. First, as discussed above with respect to petitioner's overbreadth claim, both the Supreme Court in *Ashcroft* and the Ohio Supreme Court in *Tooley* have refused to accept the hypothesis posited by petitioner that it is impossible to distinguish between virtual and real child pornography.

In any event, as the Supreme Court stated in *Williams,* 128 S.Ct. at 1846, "child pornography harms and debases the most defenseless of our citizens," and "[b]oth the State and Federal governments have sought to suppress it for many years, only to find it proliferating through the new medium of the Internet." Although the Supreme Court has carved out an exception for virtual child pornography, which is protected under the First Amendment, it also has held that the vagueness inquiry turns on whether "it is unclear whether [the challenged statute] regulates a *substantial* amount of protected speech." *Williams,* 128 S.Ct. at 1845. Here, despite the purported difficulty in distinguishing between virtual and real child pornography, the statute is not so unclear as to impinge on a substantial amount of protected speech. Therefore, it was neither contrary to nor involved an unreasonable application of clearly established Supreme Court precedents for the Ohio Court of Appeals to conclude in the instant case that "where virtual child pornography is on the fringe of protected speech, ... it is not 'unfair to require that one who deliberately goes perilously close to an area of proscribed conduct [under a statute providing adequate warning that the pandering of actual child pornography is a criminal offense] shall take the risk that he may cross the line.'" (*See* Doc. 16, Ex. 18, p. 14) (quoting *Boyce Motor Lines v. United States,* 342 U.S. 337, 340 (1952)).[6]

Accordingly, in sum, this Court further concludes that petitioner is not entitled to habeas relief based on his corrollary claim alleged in Ground One challenging the validity of his pandering convictions under Ohio Rev. Code § 2907.322 on the ground that the statute is unconstitutionally vague. *Cf. Huffman, supra,* 2008 WL 4925813, at *7-8, *17-23.

---

[6]In *Boyce Motor Line*, the Court cited in a footnote to *United States v. Petrillo*, 332 U.S. 1, 6-8 (1947), which also supports this conclusion. In holding that a criminal statute was not unconstitutionally vague, the Court stated in *Petrillo*, 332 U.S. at 7-8: "That there may be marginal cases in which it is difficult to determine the side of the line on which a particular fact situation falls is no sufficient reason to hold the language too ambiguous to define a criminal offense.... It would strain the requirement for certainty in criminal law standards too near the breaking point to say that it was impossible judicially to determine whether a person knew [that he was engaging in the proscribed offense].... The Constitution has erected procedural safeguards to protect against conviction for crime except for violation of laws which have clearly defined conduct thereafter to be punished; but the Constitution does not require impossible standards. The language here challenged conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practice. The Constitution requires no more."

**B. Ground Two, Alleging That Petitioner's Confession Was Improperly Admitted Into Evidence In Violation Of The *Corpus Delicti* Rule, Raises An Issue Of State Law Only That Is Not Cognizable In This Proceeding**

In Ground Two of the petition, petitioner alleges that the trial court violated Ohio's "*corpus delicti* rule" when it allowed his confession into evidence on the basis of improperly admitted hearsay testimony. (Doc. 2, p. 6). It appears from the record that this claim was raised by petitioner on direct appeal to the Ohio Court of Appeals as an argument in support of his third assignment of error challenging the sufficiency and weight of the evidence supporting his rape convictions. (*See* Doc. 16, Ex. 16, p. 13). On further appeal to the Ohio Supreme Court, petitioner asserted the claim as an independent proposition of law in combination with another claim challenging the admission of the hearsay testimony, which had been raised by petitioner to the Ohio Court of Appeals in a separate assignment of error . (*See id.*, pp. 10-11 & Ex. 20, pp. 11-14).

Respondent contends in the return of writ that petitioner's claim presents an issue of state law only, which is not cognizable in this proceeding. (Doc. 16, Brief, p. 22). Respondent's argument has merit.

A federal court may review a state prisoner's habeas petition only on the ground that the challenged confinement violates the Constitution, laws or treaties of the United States, and not "on the basis of a perceived error of state law." 28 U.S.C. § 2254(a); *Pulley v. Harris,* 465 U.S. 37, 41 (1984); *see also Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal court to reexamine state-court determinations on state-law questions"); *Bugh v. Mitchell,* 329 F.3d 496, 512 (6th Cir.), *cert. denied,* 540 U.S. 930 (2003).

Under Ohio's *corpus delicti* rule, a confession is not admissible unless the State has offered "some evidence" outside the confession tending to establish the substance of the crime, ordinarily consisting of two elements–the act and the criminal agency of the act. *See State v. Edwards,* 358 N.E.2d 1051, 1055 (Ohio 1976) (quoting *State v. Maranda,* 114 N.E. 1038 (Ohio 1916)), *vacated on other grounds,* 438 U.S. 911 (1978); *see also State v. Nicely,* 529 N.E.2d 1239, 1240 (Ohio 1988). The rule, which is of "ancient origin," was "born out of great caution by the courts, in consideration of certain cases of homicide wherein it had turned out that by reason of a failure of the government to prove the death of the person charged as having been murdered it so happened that such person sometimes survived the person accused as his murderer."

*Edwards,* 358 N.E.2d at 1056 (quoting *Maranda,* 114 N.E. at 1040).

It is well-settled in the Sixth Circuit that the rule, as imported to this country and developed in the common law of the various states, is a "creature of state law and does not carry with it implications of federal constitutional law." *Templeton v. Foltz,* 811 F.2d 608 (table), No. 85-1223, 1986 WL 18450, at *1 (6th Cir. Dec. 29, 1986) (per curiam) (unpublished); *see also Williams v. Lecureux,* 9 F.3d 111 (table), No. 92-2476, 1993 WL 445090, at *1 (6th Cir. Nov. 2, 1993) (per curiam) (unpublished) (affirming the state supreme court's resolution of the petitioner's claim alleging a violation of Michigan's *corpus delicti* rule on the ground that the state court's decision "applying purely state law" is "not reviewable in federal habeas corpus"); *Chambers v. Jago,* 819 F.2d 1142 (table), No. 86-3913, 1987 WL 37568, at *1-2 (6th Cir. June 2, 1987) (per curiam) (unpublished) (citing *Autry v. Estelle,* 706 F.2d 1394, 1407 (5th Cir. 1983), as support for denying habeas relief to a petitioner who claimed that his confession was improperly admitted in violation of Ohio's *corpus delicti* rule); *Dawkins v. Berghuis,* No. 1:09cv555, 2009 WL 2413290, at *11-12 (W.D. Mich. Aug. 4, 2009) (unpublished). Moreover, "no holding of the Supreme Court has ever applied the *corpus delicti* rule to the states as a matter of federal constitutional law." *Dawkins, supra,* 2009 WL 2413290, at *12; *see also Chambers, supra,* 1987 WL 37568, at *1.

Accordingly, in sum, the undersigned concludes in accordance with Sixth Circuit precedents that petitioner's claim in Ground Two challenging the admission of his confession under Ohio's *corpus delicti* rule presents as issue of state law only, which is not cognizable in this federal habeas proceeding.[7]

---

[7]In so concluding, the undersigned notes that petitioner is not seeking habeas relief based on his claim that the hearsay evidence allegedly relied on as corroborating evidence of a *corpus delicti* was improperly admitted in violation of the Confrontation Clause. Even assuming this allegation gives rise to a federal constitutional issue subject to review herein in addressing petitioner's claim challenging the admission of his confession, petitioner is unable to prevail on such claim. On appeal, petitioner argued that the court could not rely on the "inadmissible hearsay statements of S.K., the 'choo choo' incident and the lay opinion of a pediatrician based solely on what Appellant had admitted to law enforcement," as well as a statement made by petitioner "to Ms. Moore [when] she questioned [him] about these crimes as an investigator." (*See* Doc. 16, Ex. 16, p. 13 & Ex. 20, p. 14). Without addressing whether these arguments have any merit, additional corroborating evidence was presented and relied on by the Ohio Court of Appeals in rejecting petitioner's claim challenging the admission of his confession, including petitioner's course of conduct in Internet and email exchanges with "Lisa" and his admission during one such exchange that "he had anally raped his daughter on prior occasions and that he could make her perform fellatio." (Doc. 16, Ex. 18, p. 8).

## C. Petitioner Has Waived His Third Ground For Relief Due To His Failure To Present It As A Claim Of Error On Appeal To The Ohio Supreme Court

In Ground Three of the petition, petitioner alleges that the evidence was insufficient to support his convictions for rape and pandering, and that the court's verdicts of guilt are against the manifest weight of the evidence. (Doc. 2, p. 8). Respondent contends in the return of writ that petitioner has waived this ground for relief because he did not raise it on appeal to the Ohio Supreme Court after the Ohio Court of Appeals issued its decision on direct appeal overruling his assignments of error and affirming his convictions. (Doc. 16, Brief, pp. 23-25).[8]

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state defendant with federal constitutional claims must fairly present those claims to the state courts for consideration before raising them in a federal habeas corpus action. *See* 28 U.S.C. § 2254(b)(1), (c); *see also Anderson v. Harless,* 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor,* 404 U.S. 270, 275-76 (1971). A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 848 (1999); *Hafley v. Sowders,* 902 F.2d 480, 483 (6th Cir. 1990); *Leroy v. Marshall,* 757 F.2d 94, 97, 99-100 (6th Cir.), *cert. denied,* 474 U.S. 831 (1985).

If, because of a procedural default, the petitioner has not had a claim considered by the state's highest court and he can no longer present the claim to the state courts, he has waived such claim for purposes of federal habeas corpus review unless he can

---

[8]Respondent also argues that petitioner's manifest-weight-of-the-evidence claim is not cognizable in this proceeding. (Doc. 16, Brief, p. 25). As discussed above, a federal court may review a state prisoner's habeas petition only on the ground that the challenged confinement violates the Constitution, laws or treaties of the United States, and not "on the basis of a perceived error of state law." 28 U.S.C. § 2254(a); *Pulley,* 465 U.S. at 41; *see also Estelle,* 502 U.S. at 68. As respondent has argued, a manifest-weight-of-the-evidence claim, which is based on a state-law concept that is "both quantitatively and qualitatively different" from a constitutional due process sufficiency-of-evidence standard, *see Tibbs v. Florida,* 457 U.S. 31, 41-47 (1982), and *State v. Thompkins,* 678 N.E.2d 541, 546-48 (Ohio 1997), raises an issue of state law only that is not cognizable in a federal habeas corpus proceeding such as this. Therefore, only petitioner's claim challenging the sufficiency of evidence presents a constitutional issue subject to federal habeas review.

demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional error, or that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750 (1991); *see also Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

In this case, as respondent has argued, although petitioner challenged both the sufficiency and weight of the evidence supporting his convictions on direct appeal to the Ohio Court of Appeals, he committed a procedural default by abandoning these claims on further appeal to the state supreme court. (*See* Doc. 16, Ex. 16, pp. 11-15; Ex. 20).

Because petitioner failed to assert the claims as a proposition of law in his memorandum in support of jurisdiction, he did not provide the Ohio Supreme Court with an opportunity to address them. Accordingly, because of his procedural default in the state courts, the undersigned concludes that petitioner has waived his third ground for relief unless he establishes cause for his default and actual prejudice as a result of the alleged claim of constitutional error, or demonstrates that failure to consider his defaulted constitutional claim will result in a "fundamental miscarriage of justice." *Coleman,* 501 U.S. at 750; *see also Murray,* 477 U.S. at 485; *Engle,* 456 U.S. at 129; *Sykes,* 433 U.S. at 87.

Petitioner has not provided any justification as "cause" for his procedural default. He also has not shown that failure to consider his defaulted constitutional sufficiency-of-evidence claim will result in a "fundamental miscarriage of justice," or in other words, that the alleged error "probably resulted in the conviction of one who is actually innocent." *See Murray,* 477 U.S. at 495-96; *see also Schlup v. Delo,* 513 U.S. 298, 327 (1995).

To establish a claim of actual innocence for the purpose of overcoming a procedural bar to habeas review, petitioner "must show that it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt" based on "new reliable evidence ... that was not presented at trial." *Schlup,* 513 U.S. at 324, 327. The exception is "rare" and is to be applied only in the "extraordinary case," where the "new facts raise[] sufficient doubt about [the petitioner's] guilt to undermine the confidence in the result of the trial." *Id.* at 317, 321.

Petitioner has made no such showing in this case. Although petitioner has

alleged in the defaulted ground for relief that the evidence presented at trial was insufficient to support his convictions, establishing a colorable claim of actual innocence requires a showing of factual innocence, not mere legal insufficiency. *Bousley v. United States,* 523 U.S. 614, 623 (1998); *Hampton v. United States,* 191 F.3d 695, 703 (6th Cir. 1999); *see also Dixon v. Hudson,* No. 1:05cv2499, 2008 WL 540905, at *7 (N.D. Ohio Feb. 25, 2008) (unpublished).

Accordingly, in sum, the undersigned concludes that petitioner has waived his third ground for relief, and that the claims raised therein are thus barred from review by this Court.

## IT IS THEREFORE RECOMMENDED THAT:

1. Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 2) be **DENIED** with prejudice.

2. A certificate of appealability should not issue with respect to the constitutional claim alleged in Ground Three, which this Court has concluded is waived and thus procedurally barred from review, because under the first prong of the applicable two-part standard enunciated in *Slack v. McDaniel,* 529 U.S. 473, 484-85 (2000), "jurists of reason" would not find it debatable whether this Court is correct in its procedural ruling.[9]

A certificate of appealability also should not issue with respect to the state-law claim alleged in Ground Two, which is not procedurally barred from review, because petitioner has failed to make a substantial showing of the denial of a constitutional right in that ground for relief; however, because the claims alleged in Ground One present issues that are "adequate to deserve encouragement to proceed further," *see Slack,* 529 U.S. at 475 (citing *Barefoot v. Estelle,* 463 U.S. 880, 893 & n.4 (1983)), a certificate of appealability should issue with respect to petitioner's claims, which were addressed on the merits herein, challenging the constitutionality of Ohio Rev. Code §

---

[9]Because the first prong of the *Slack* test has not been met, the Court need not address the second prong of *Slack* as to whether "jurists of reason" would find it debatable whether petitioner has stated a viable constitutional claim in the procedurally-barred ground for relief. *See Slack,* 529 U.S. at 484.

2907.322 on overbreadth and vagueness grounds.[10] *See* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

3. With respect to any application by petitioner to proceed on appeal *in forma pauperis*, the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would be taken in "good faith," and therefore **GRANT** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

Date: 11/18/09

cbc

Timothy S. Hogan
United States Magistrate Judge

J:\BRYANCC\2009 habeas orders\08-670denypet.childrape-pandering.overbroad-vague.waiv-OhSCt-sufficevid.manifestwt.corpusdelicti.wpd

---

[10]Because this Court's adjudication of Grounds One and Two does not involve the denial or dismissal of petitioner's claims on procedural grounds, the two-part test enunciated in *Slack,* 529 U.S. at 484-85, for determining whether or not to issue a certificate of appealability for procedurally-defaulted claims, is inapplicable.

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

Paul Anthony Kraft,
    Petitioner

      vs
                              Case No. 1:08cv670
                              (Spiegel, S.J.; Hogan, M.J.)

Warden, Southern Ohio
Correctional Facility,
    Respondent

# NOTICE

Attached hereto is a Report and Recommendation issued by the Honorable Timothy S. Hogan, United States Magistrate Judge, in the above-entitled habeas corpus action. Pursuant to Fed. R. Civ. P. 72(b), which may be applied in this action under Rules 1 and 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, any party may object to the Magistrate Judge's Report and Recommendation within ten (10) days after being served with a copy thereof. Such party shall file with the Clerk of Court and serve on all other parties written objections to the Report and Recommendation, specifically identifying the portion(s) of the proposed findings, recommendations, or report objected to, together with a memorandum of law setting forth the basis for such objection(s). Any response by an opposing party to the written objections shall be filed within ten (10) days after the opposing party has been served with the objections. *See* Fed. R. Civ. P. 72(b). A party's failure to make objections in accordance with the procedure outlined above may result in a forfeiture of his rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

| SENDER: *COMPLETE THIS SECTION* | COMPLETE THIS SECTION ON DELIVERY |
|---|---|

**SENDER:** *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X  ☑ Agent
   ☐ Addressee

B. Received by ( *Printed Name* )   C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

1. Article Addressed to:

Paul Anthony Kraft
516-966
SOCF
P.O. Box 45699
Lucasville, OH 45699

3. Service Type
   ☑ Certified Mail   ☐ Express Mail
   ☐ Registered   ☐ Return Receipt for Merchandise
   ☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? *(Extra Fee)*   ☐ Yes

2. Article Number
   *(Transfer from service label)*   7002 3150 0000 8388 4384

PS Form 3811, August 2001       Domestic Return Receipt       102595-02-M-1540

1:08cv670  (Doc. 17)